IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHNNESHA B.,[1]    3:20-cv-01132-BR

      Plaintiff,    OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

**KEVIN KERR**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

      Attorneys for Plaintiff

**SCOTT ASPHAUG**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

       Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Johnnesha B.[1] seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's applications on behalf of Nymia H. for Childhood SSI and SSI under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

On June 14, 2017, Plaintiff protectively filed an application for Childhood SSI on behalf of Nymia H. who was under

---

[1] Johnnesha B. filed the applications for Childhood Supplemental Security Income (Childhood SSI) and Supplemental Security Income (SSI) on behalf of her disabled child, Nymia H. Johnnesha B., therefore, is the named Plaintiff.

2   - OPINION AND ORDER

18 years of age. Tr. 133.[2] Plaintiff alleges Nymia H.'s disability onset date was November 1, 2006. Tr. 133. The Commissioner denied the application initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on July 9, 2019. Tr. 37-57. Plaintiff and Nymia H. were represented at the hearing. Plaintiff, Nymia H., and a vocational expert (VE) testified.

The ALJ issued a decision on October 24, 2019, in which she found Nymia H. is not disabled and, therefore, is not entitled to benefits. Tr. 20-33. On May 8, 2020, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-6. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Nymia H. was born on May 19, 2005, and was 14 years old at the time of the hearing. Tr. 133.

Plaintiff alleges Nymia H. is disabled due to attention deficit hyperactivity disorder (ADHD), depression, seizures, and being a "habitual liar." Tr. 58.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the

---

[2] Citations to the official transcript of record filed by the Commissioner on November 3, 2020, are referred to as "Tr."

3 - OPINION AND ORDER

medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 25-27.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant under the age of 18 must demonstrate she is not "engaging in substantial gainful activity" and has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. *See also Jessica C. v. Comm'r*, No. C20-5737 RSM, 2021 WL 1063431, at *1 (W.D. Wash. Mar. 18, 2021)(same).

The court "will set aside a denial of Social Security benefits only when the ALJ decision is 'based on legal error or not supported by substantial evidence in the record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017)(quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo*, 871 F.3d at 674 (quotation omitted). When

4 - OPINION AND ORDER

"'evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.'" *Id*. at 674-75 (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). The court "'must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.'" *Trevizo*, 871 F.3d at 675 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

An individual under 18 years of age is eligible for Childhood SSI payments based on disability when she is not "engaging in substantial gainful activity" and has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

The Commissioner has developed a three-step sequential inquiry to determine whether a claimant under 18 years of age is disabled within the meaning of the Act. 20 C.F.R. § 416.924(a).

5 - OPINION AND ORDER

At Step One the Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's application for benefits under Step Two. 20 C.F.R. § 416.924(b).

At Step Two the Commissioner determines whether the claimant has one or more severe impairments. An impairment is severe when it is more than a "slight abnormality or a combination of slight abnormalities" and causes more than "minimal functional limitations." 20 C.F.R. § 416.924(c). If the claimant does not have a severe impairment, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's application under Step Three. 20 C.F.R. § 416.924(c).

At Step Three the Commissioner determines whether the claimant's impairments "meet, medically equal, or functionally equal" any of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d)(1). If this equivalency test is met and the statutory duration requirement is satisfied, the claimant is found disabled before she reaches 18 years of age. If the claimant's impairments do not meet, medically equal, or functionally equal an impairment listed in the regulations, the

claimant is not disabled.  20 C.F.R. § 416.924(d).

"An impairment functionally equals a Listing when the child has marked limitations in two areas of functioning or an extreme limitation in one area."  *Jessica C.*, 2021 WL 1063431, at *1 (citing 20 C.F.R. § 416.926a(a)).  "The six areas of functioning, or domains, are:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being."  20 C.F.R. § 416.926a(b)(1).  A marked limitation exists when an impairment "seriously" interferes with the claimant's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  An extreme limitation exists when a claimant's impairment interferes "very seriously" with her "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

## ALJ's FINDINGS

At Step One the ALJ found Nymia H. had not engaged in any substantial gainful activity since her June 14, 2017, application date.  Tr. 23.

At Step Two the ALJ found Nymia H. has the severe impairments of "persistent depressive disorder" and oppositional defiant disorder.  Tr. 23.

At Step Three the ALJ concluded Nymia H. does not have an impairment or combination of medically determinable impairments that meets or medically equals one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ also found Nymia H. "does not have an impairment or combination of impairments that functionally equals the severity of the listings." Tr. 24. The ALJ found Nymia H. has a marked limitation in "attending and completing tasks"; a "less than marked limitation" in "acquiring and using information" and in "interacting and relating with others"; and "no limitation" in "moving about and manipulating things," in her "ability to care for herself," and in her "health and physical well-being." Tr. 29-32. Accordingly, the ALJ concluded Nymia H. does not have "an impairment or combination of impairments that result in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning," and, therefore, Nymia H. is not disabled. Tr. 32.

## DISCUSSION

Plaintiff contends the ALJ erred when she improperly failed to consider the opinion of Juilen Coudra, Behavior Specialist.

The ALJ is "not required to articulate how [she] consider[s] evidence from nonmedical sources using the requirements" of supportability, consistency, specialization, and length of

8 - OPINION AND ORDER

treatment relationship that the ALJ is required to use for evaluation of medical sources. 20 C.F.R. § 416.920c(d).

On September 14, 2017, Coudra completed a Teacher Questionnaire Form in which he noted he has known Nymia H. for two years and has seen her "intermittently throughout a regular school week." Tr. 158. Coudra noted Nymia H.'s "actual grade level" was "5th and 6th," but he did not know what her "current instructional levels" were in reading, math, or written language. Tr. 158. Coudra stated Nymia H. has an "unusual degree of absenteeism" and noted her "mother would keep her home for multiple days, student rarely did a full week in school." Tr. 158. In the domain for "acquiring and using information," Coudra stated Nymia H. has "a serious problem" with "providing organized oral explanations and adequate descriptions," in "expressing ideas in written form," and in "applying problem-solving skills in class discussions." Tr. 159. Coudra noted Nymia H.

> is very bright however due to her chronic absences and behavioral issues she misses a lot of instruction. Because of this she has fallen behind in academics below grade level, which leads to frustration whenever she can't grasp a new concept. Often this leads to her acting out and getting into more trouble.

Tr. 159. In the domain of "attending and completing tasks," Coudra stated Nymia H. has "a very serious problem" in 10 out of 13 areas "hourly." Coudra noted Nymia H. "could benefit from a

more structured schedule, establishing routines would give her
some regularity something she may not have at home." Tr. 160.
In the domain of "interacting and relating with others," Coudra
stated Nymia H. has a "very serious problem" hourly in the areas
of "expressing anger appropriately," "following rules,"
"respecting/obeying authority," and "using adequate vocabulary
and grammar to express thoughts/ideas in general, everyday
conversation"; a "very serious problem" daily in the areas of
"relating experiences and telling stories," "using language
appropriately [*sic*] to the situation and listener," "introducing
and maintaining relevant and appropriate topics of conversation,"
and "taking turns in conversation"; and "a serious problem" daily
in "making and keeping friends" and "asking permission
appropriately." Tr. 161. Coudra noted various behavior-
modification strategies were implemented for Nymia H. including
"break space," removal from class, suspension, "special jobs
around school," and being a teacher's aide. Tr. 161. In the
domain of "caring for . . . herself," Coudra stated Nymia H. has
"a very serious problem" daily in the areas of "handling
frustration appropriately," "being patient when necessary,"
"responding appropriately to changes in own mood," and "using
appropriate coping skills to meet daily demands of school
environment." Tr. 163. Coudra stated Nymia H. does not have any
problem in the domain of "moving about and manipulating objects."

Tr. 162.  Coudra noted Nymia H. "misses a lot of school.  Mother will say she is sick but not sure if this is true."  Tr. 164.

The ALJ referenced Coudra's statements in her decision, in her evaluation of the six domains of functioning, and in her conclusion that Nymia H. does not have either marked limitations in two areas of functioning or an extreme limitation in one area of functioning.  Although the ALJ did not articulate specific reasons for partially rejecting Coudra's assessment of Nymia H.'s limitations, the ALJ noted in her opinion that other evidence in the record reflected Nymia H. is not as limited as Coudra indicated.  For example, on October 28, 2017, Gregory Cole, Ph.D., examining psychologist, conducted a psychodiagnostic examination of Nymia H., administered psychological assessments, and noted Nymia H. has "problems with attention and concentration" as well as below-average immediate- and delayed-memory capabilities.  Tr. 223-24.  Dr. Cole, however, also noted Nymia H. presented with a good mood, congruent affect, good eye contact, and relaxed posture, and she was able to "complete a simple multi-step task, with no errors."  In addition, Dr. Cole stated there "was some evidence of poor effort" by Nymia H. on testing.  Tr. 224.  Dr. Cole concluded Nymia H. "could benefit from follow-up psychological services and behavioral medication management."  Tr. 224.  On November 17, 2017, Melyna Kimball, Nymia H.'s math teacher, filled out a teacher questionnaire in

which she noted Nymia H. does not have any "very serious problem" in the domains of "acquiring and using information," "interacting and relating with others," or "caring for . . . herself," but she has a "very serious problem" in two out of ten areas in the domain of "attending and completing tasks." Tr. 184-88.

The ALJ also pointed out that the record reflects Plaintiff has some secondary-gain motive. The ALJ noted Nymia H. was seen on November 6, 2018, by Deborah Pack-Patton, Psy.D., treating psychologist. Dr. Pack-Patton reported Plaintiff stated Nymia H. "is depressed and needs to see a counselor as [Plaintiff] wants [Nymia H.] identified as disabled in order to get a larger apartment." Tr. 277. Dr. Pack-Patton stated Nymia H. is "not on an IEP," Plaintiff does not want Nymia H. to be on an IEP, and Plaintiff "just wants a signature on a piece of paper saying [Nymia H.] is disabled so she (mother) can get a larger apartment with separate bedrooms for [Nymia H.] and her brother because they fight with each other." Tr. 277. Dr. Pack-Patton advised Plaintiff that she was "unable to sign that type of document because [she did] not have any information that indicates [Nymia H.] is disabled," at which point Plaintiff said "that is the only reason she came to the appointment." Tr. 277. Plaintiff and Nymia H. "walk[ed] out of the office, with mother asking to see a manager because she is not happy with [Behavioral Health]." Tr. 277. Dr. Pack-Patton consulted with Nymia H.'s primary-care

provider, Seth Williams, M.D., about her interaction with Nymia H., and Dr. Williams "state[d] there is no indication that [Nymia H.] is disabled."  Tr. 278.

The ALJ also noted Plaintiff failed to bring Nymia H. to treatment consistently.  For example, on November 8, 2018, Cherrie Padua, M.H.P., recommended Nymia H. undergo individual therapy for one hour every other week and family therapy for one hour every week for 12 months.  The record, however, reflects Nymia H. did not attend any therapy sessions at Lifeworks from November 8, 2018, through December 17, 2018, because Plaintiff was too busy to bring her to appointments or to schedule appointments.  Tr. 294-301.  On January 15, 2019, Nymia H. was discharged from therapy for failure to engage in services.  Tr. 318.  On May 20, 2019, Rachel Sayer, M.A., Q.M.H.P., recommended Nymia H. engage in individual and family therapy "2-4x per month for the next 6-12 months in order to address symptoms" of depression.  Tr. 313.  The record contains only one mental-health treatment note in June 2019 before the hearing in this matter on July 9, 2019.  Tr. 316.

Coudra is not a medical source.  As noted, the ALJ is required to evaluate supportability, consistency, specialization, and length-of-treatment relationship of medical sources, but the ALJ is "not required to articulate how [she] consider[s] evidence from nonmedical sources."  20 C.F.R. § 416.920c(d).  The ALJ,

therefore, was not required to specifically articulate why she did not adopt all of the limitations noted by Coudra. The ALJ, however, referenced Coudra's statements throughout her decision and pointed out other areas in the record that contradicted or that did not support Coudra's statements.

On this record, therefore, the Court concludes the ALJ did not err when she did not specifically articulate reasons for partially rejecting Coudra's statements regarding Nymia H.'s limitations because the ALJ was not required to do so, and, in any event, she provided legally sufficient reasons supported by substantial evidence in the record for declining to adopt Coudra's statements in full.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 25th day of May, 2021.

/s/ Anna J. Brown
_____

ANNA J. BROWN
United States Senior District Judge